**Robert GILLESPIE, Appellant–Plaintiff,**

v.

**GEICO GENERAL INSURANCE COMPANY, Appellee–Defendant.**

**No. 49A02–0510–CV–925.**

Court of Appeals of Indiana.

April 19, 2006.

Publication Ordered May 22, 2006.

Randall L. Juergensen, Matthew C. Boulton, Keller & Keller, Indianapolis, for Appellant.

Mark D. Gerth, Kightlinger & Gray, LLP, Indianapolis, for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Robert Gillespie appeals the trial court's order granting judgment in favor of GEICO General Insurance Company ("GEICO" or "Geico"). We reverse.

### Issue

Gillespie raises various issues,[1] which we consolidate and restate as whether Gillespie sufficiently "identified" the owner or operator of the vehicle that caused an accident and left the scene such that it qualified as an "uninsured auto" under the GEICO Insurance Policy (the "Policy").

### Facts and Procedural History

On May 25, 2004, the parties submitted a "Stipulation, Waiver of Jury Trial, Agreed Statement of Facts, and Statement of Issues," in which they agreed that the trial court should "decide and enter judgment in this matter based upon" the following statement of agreed facts:

1. [Geico] issued to Barbara J. Gillespie and Robert Gillespie, Jr. its Indiana Family Automobile Insurance Policy, Policy # 104–09–80, which was in full force and effect on December 12, 1999. [Attached as Exhibit 1].

2. On or about December 12, 1999, at approximately 10:17 p.m., [Gillespie] was operating a 1995 Ford Contour automobile which was listed as an insured vehicle on Geico's policy with the permission of the named insured [Gillespie's parents] on Interstate 465 in Marion County, Indiana.

3. At said date and time, [Gillespie] was involved in a motor vehicle accident which was caused by the negligent acts of a female driver operating a white Honda vehicle.

---

1. In the table of contents and in the body of his appellant's brief, Gillespie separates his arguments into four parts. Yet, in his statement of the issues, he lists two questions.

4. The driver of the white Honda lost control of her vehicle and struck another vehicle which was driving southbound in the right hand lane of I–465. The white Honda continued to spin and eventually came to rest in the middle of the southbound lanes of the highway.

5. [Gillespie] was driving in the middle lane on the southbound side of I–465 when he turned his vehicle to avoid a collision with the white Honda. As a result, [Gillespie's] vehicle struck the inside median wall.

6. As a direct and proximate result of the negligence of the motorist in the white Honda, and the resultant collision, [Gillespie] suffered personal injuries. The damages incurred by [Gillespie] as a result of his personal injuries exceed $50,000.00.

7. After initially stopping, the female driver of the Honda left the scene after the collision occurred. No one obtained the name or address of the driver. No one obtained the license plate number from the vehicle which Plaintiff [sic] was driving.

8. Both the driver and the owner of the white Honda vehicle are unknown.

9. The policy issued by Geico contained Uninsured Motorist coverage with limits of $50,000.00 per person and $100,000.00 per accident.

10. In the Policy Index to the Policy, the coverage is described as: "Uninsured Motorist Coverage Your Protection for Injuries Caused by Uninsured and Hit and Run Motorists".

11. However, no coverage for "Hit and Run Motorists" is set forth in the policy nor is the term "Hit and Run Motorists" set forth therin [sic].

12. In the body of the policy, the coverage is set out under the following title: Uninsured Motorist Coverage—Protection for You and Your Passengers for Injuries Caused by Uninsured Motorists.

13. Under the terms of the policy, Geico agrees to:

" . . . pay damages for **bodily injury** caused by accident which the **insured** is legally entitled to recover from the owner or operator of an **uninsured auto** arising out of the ownership, maintenance or use of that auto."

14. The term "insured" is defined as follows:

"**1. 'Insured'** means:

(a) the individual named in the declarations and his or her spouse if a resident of the same household;

(b) **relatives** of (a) above if residents of his household;

(c) any other person while **occupying** an **owned auto**;

(d) any person who is entitled to recover damages because of **bodily injury** sustained by an **insured** under (a), (b), and (c) above."

15. [Gillespie] is an insured for the reason that he was occupying an owned auto as that term is defined in the policy.

16. The policy defines uninsured auto, in pertinent part, as follows:

"**5. 'Uninsured auto'** is a motor vehicle which has no bodily injury liability bond or insurance policy applicable with liability limits complying with the financial responsibility law of the **state** in which the **insured auto** is principally garaged at the time of the accident. This term also includes an auto whose insurer is or becomes insolvent or denies coverage.

The term '**uninsured auto**' does not include:

\*　　\*　　\*

(f) a vehicle whose owner or operator cannot be identified."

Appellant's App. at 81–84. In that same stipulation, the parties set out their statement of issues as follows:

> The issue for determination by the Court is whether the white Honda automobile was an "uninsured auto" as that term is defined in the policy.
>
> If the Court determines that the vehicle was an uninsured auto, then the Court should enter judgment in favor of [Gillespie] in the amount of $50,000.00, the per person limits of the uninsured motorist coverage.
>
> If the Court determines that the vehicle was not an "uninsured auto", then the Court should enter judgment for Geico and against [Gillespie].

*Id.* at 84. The parties further stipulated that, in issuing its judgment, the court could consider previously filed briefs in support of and in opposition to summary judgment.[2] *Id.*

In an order file-stamped on June 14, 2005, the court entered judgment for GEICO and against Gillespie as follows:

> The parties having filed their Stipulation, Waiver of Jury Trial, Agreed Statement of Facts, and Statement of Issues herein on May 25, 2005 now submit the issues raised by the Complaint in this cause upon the documents set forth in Section III, Statement of Issues, page 4 of said document.
>
> The court having considered the record before it now finds that the language of the uninsured motorist coverage section states, "The term 'uninsured auto' does not include: ... (f) a vehicle whose owner or operator cannot be identified." The court further concludes that this language controls over that the language in the policy that [Gillespie] argues creates a conflict. The court[,] finding that

there exists no ambiguity in the policy[,] further finds that the Geico policy does not provide insurance coverage to [Gillespie] for the damages outlined in [Gillespie's] Complaint.

*Id.* at 6. Thereafter, Gillespie filed a motion to correct error, which was denied. He now appeals.

## Discussion and Decision

### *Standard of Review*

■ We first clarify that while GEICO cites the general summary judgment standard of review, this is not an appeal from the grant/denial of summary judgment. As stated above, the court denied summary judgment, accepted the parties' "Stipulation, Waiver of Jury Trial, Agreed Statement of Facts, and Statement of Issues," held oral argument, took the matter under advisement, and then entered "Judgment" for GEICO. Hence, to be precise, this is an appeal from a judgment based upon agreed facts and documentary evidence. Where, as here, the decision is based entirely upon documentation or a stipulation by the parties, we are in as good a position as the trial court "to determine its force and effect." *Soc'y for Prevention of Cruelty to Animals and Humane Soc'y of Delaware County, Inc. v. City of Muncie ex rel. Scroggins,* 769 N.E.2d 669, 673 (Ind.Ct.App.2002); *cf. Fratus v. Marion Cmty. Schs. Bd. of Trs.,* 749 N.E.2d 40, 43 (Ind.2001). Accordingly, we apply a de novo standard of review. *See Dedelow v. Pucalik,* 801 N.E.2d 178, 183 (Ind.Ct.App.2003); *see also Wright v. Am. States Ins. Co.,* 765 N.E.2d 690, 692 (Ind.Ct.App.2002) (noting that where parties do not dispute material facts, we limit our review to whether trial court correctly

---

**2.** The parties filed cross motions for summary judgment. After hearing oral argument and taking the matter under advisement, the court denied summary judgment, finding that a

genuine issue of material fact existed. *See* Appellant's App. at 79 (August 18, 2003 order).

applied law to undisputed facts, that is, we review the matter de novo).

### "Identified" in Reference to "Uninsured Auto"

Gillespie asserts that he is entitled to uninsured motorist benefits under the Policy "because both the vehicle and the driver were identified. It was a white Honda driven by a Caucasian female." Appellant's Br. at 6. He notes that three different people provided the same description of the woman and her car, and that GEICO did not provide an explicit definition that would require additional information to meet the requirement of "identified."

As we do with other contracts, we interpret an insurance policy with the goal of ascertaining and enforcing the parties' intent as manifested in the insurance contract. *See Wright*, 765 N.E.2d at 692. "Although some special rules of construction of insurance contracts have been developed due to the disparity in bargaining power between insurers and the insured, if an insurance contract is clear and unambiguous, the language therein must be given its plain and ordinary meaning." *Beam v. Wausau Ins. Co.*, 765 N.E.2d 524, 527 (Ind.2002). Stated otherwise, we may not extend coverage beyond that provided in the contract, nor may we rewrite the clear and unambiguous language of that document. *See Shelter Ins. Co. v. Woolems*, 759 N.E.2d 1151, 1155 (Ind.Ct.App.2001), *trans. denied.* Rather, we construe only *ambiguous* insurance policies, those which contain language about which reasonably intelligent policyholders honestly may differ. *See Burkett v. Am. Family Ins. Group*, 737 N.E.2d 447, 453 (Ind.Ct.App. 2000). An ambiguity does not exist merely because the parties proffer differing interpretations of the policy language. *Wright*, 765 N.E.2d at 693.

When presented with an ambiguous insurance contract, we construe it as a whole, instead of considering individual words, phrases, or paragraphs. *See id.* at 692–93. At the same time, we "make all attempts to construe the language" so as not to "render any words, phrases, or terms ineffective or meaningless." *Peoples Bank & Trust Co. v. Price*, 714 N.E.2d 712, 716 (Ind.Ct.App.1999), *trans. denied.* Along that same vein, we accept an interpretation of the contract language that harmonizes the provisions rather than one which supports a conflicting version of the provisions. *Burkett*, 737 N.E.2d at 452. "We interpret policy terms from the perspective of an ordinary policyholder of average intelligence." *Ill. Farmers Ins. Co. v. Wiegand*, 808 N.E.2d 180, 184 (Ind. Ct.App.2004), *trans. denied.* We construe ambiguous language strictly against the insurer "when a dispute involves an insurer and its insured[.]" *Burkett*, 737 N.E.2d at 452 (citing *Gallant Ins. Co. v. Amaizo Fed. Credit Union*, 726 N.E.2d 860, 864 (Ind.Ct.App.2000), *trans. denied; Town of Orland v. Nat'l Fire & Cas. Co.*, 726 N.E.2d 364, 370 (Ind.Ct.App.2000), *trans. denied;* and *Great Lakes Chem. Corp. v. Int'l Surplus Lines Ins. Co.*, 638 N.E.2d 847, 850 (Ind.Ct.App.1994)).

While Gillespie did not sign his parents' insurance contract, he is clearly an insured under the Policy. The Policy defines "insured" as "any other person while **occupying** an **owned auto**." Appellant's App. at 22. The Policy defines "occupying" as "in," and defines "owned auto" as the "vehicle described in this policy for which a premium charge is shown for these coverages[.]" *Id.* at 22, 15. Gillespie was driving in the car described in the Policy when the accident occurred. Therefore, Gillespie was an insured, and we construe any ambiguous language strictly against GEICO.

According to Section IV, the Uninsured Motorists Coverage portion of the Policy, GEICO "will pay damages for bodily injury caused by accident which the insured is legally entitled to recover from the owner or operator of an uninsured auto arising out of the ownership, maintenance or use of that auto." *Id.* at 23. Under that same section, GEICO states that "uninsured auto" does not include "a vehicle whose owner or operator cannot be identified." *Id.* at 23. The Policy does not define "identified."

A policyholder of reasonable intelligence could certainly read "identified" to mean "ascertain[ed] the origin, nature or definitive characteristics of." *See* THE AMERICAN HERITAGE DICTIONARY 639 (2d College Ed.1991). Other plain and ordinary meanings of "identified" are classified and/or catalogued. *See* WEBSTER'S NEW WORLD DICTIONARY AND THESAURUS 304 (1996). A reasonable policyholder could also read "identified" to mean described, distinguished, picked out, or recognized. *See* ROGET'S NEW MILLENNIUM THESAURUS (1st Ed. v 1.1.1 2006), *http://thesaurus.reference.com/search?q=identify* (last visited Feb. 8, 2006). If read any of these ways, the description of the Caucasian woman driving the white Honda would seem to meet the requirement of "identified." Obviously, "identified" has other plausible meanings, some of which would require more specificity. Accordingly, "identified" is an ambiguous term in this context. Construing the language strictly against the insurer, as we must, we conclude that Gillespie sufficiently identified the owner or operator of the vehicle such that the white Honda was not excluded by the portion of Section IV that states " 'uninsured auto' does not include ... a vehicle whose owner or operator cannot be identified." Appellant's App. at 22–23. Because the

Caucasian female driver of the white Honda left the scene of the accident that she caused, there was "no bodily injury liability bond or insurance policy applicable with liability limits complying with [Indiana's] financial responsibility law" available. *Id.* (Policy's definition of "uninsured auto"). Thus, the white Honda was an uninsured auto under the Policy, and coverage should not have been denied.

Had more detailed identification been its goal, GEICO, as the drafter of the Policy, should have explicitly defined "identified" to require certain information. However, GEICO chose not to require particular information, such as license plate number, model of car, and/or driver's license number. Instead, GEICO created further ambiguity by including the following language in the Policy's index:

**SECTION IV**

**Uninsured Motorists Coverage**

**Your Protection For Injuries Cause [sic] by Uninsured**

***And Hit and Run* Motorists**

Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10
Losses We Pay . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11
Exclusions: When Section IV Does Not Apply . . . . .11

*Id.* at 14 (emphasis added). Upon referring to the body of Section IV, one sees:

**SECTION IV**

**Uninsured Motorist Coverage**

**Protection For You and Your Passengers For Injuries**

**Caused by Uninsured Motorists**

**DEFINITIONS**

*Id.* at 22. Despite the inclusion of "Hit and Run" language in bold in the Policy's index,[3] GEICO provides no definition for "hit and run" or "hit and run motorists" under either Section IV or Section I. *Id.* at 22, 15 (Section I listing definitions for words not specifically defined in Section

---

**3.** In its appellee's brief, GEICO characterizes the inclusion of the "hit and run" language as

a "discrepancy" and offers no explanation for it. Appellee's Br. at 9.

IV). "Hit and run" is not separately mentioned in the body of Section IV; indeed, it is not mentioned at all. Further, "hit and run" is not enumerated as an exclusion to the Policy's coverage for uninsured motorists. *See id.* at 23 (outlining situations where Section IV does not apply). No evidence was presented to indicate that separate "hit and run" coverage was offered but declined. Accordingly, reasonable minds viewing the entire Policy could interpret the uninsured motorist section with its ambiguous "identified" language as covering the type[4] of accident that occurred here.[5]

In sum, applying our de novo review standard, we conclude that the white Honda driven by the Caucasian female was an "uninsured auto" under the Policy. Therefore, we reverse with instructions to enter judgment in favor of Gillespie in the amount of $50,000.00, the per person limit of the uninsured motorist coverage.

Reversed.

FRIEDLANDER, J., concurs.

MAY, J., concurs with opinion.

MAY, Judge, concurring.

I agree Gillespie sufficiently "identified," for purposes of coverage under the Uninsured Motorist provisions of the GEICO policy, the driver of the vehicle that caused him to collide with the median wall. I write separately, however, to address the anomaly of the "identification" requirement in this policy in light of the policy's lack of clarity regarding uninsured motorist coverage for "hit-and-run" and "miss-and-run" accidents, where the uninsured motorist will typically be unidentifiable.

As the majority notes, the index to the policy refers to Section IV, Uninsured Motorists Coverage, stating "Your Protection For Injuries Caused by Uninsured And Hit And Run Motorists." (App. at 22–23.) But in Section IV there is no mention of "hit-and-run"; it is not defined, nor is it enumerated as an exclusion to uninsured motorist coverage. This suggests Section IV provides some type of "hit-and-run" coverage yet at the same time it appears to require as a condition of coverage that the "hit-and-run" motorist be "identified." This would appear to render the coverage illusory in many common situations.

"Hit-and-run" drivers are by their nature usually "unidentified" and unidentifiable. *See* David J. Marchitelli, Annotation, *Uninsured Motorist Indorsement: Construction and Application of Requirement that There Be "Physical Contact" with Unidentified or Hit–and–Run Vehicle; "Miss–and–Run" Cases,* 77 A.L.R.5th 319 § 2(a) (2000)(noting the concept of "uninsured motorist has been expanded to include 'hit-and-run' vehicles whose opera-

---

4. Our reading does not render "identified" meaningless. GEICO could still arguably deny a claim for an accident where no identifying information was known. For example, if a policyholder exited his home one morning to find that his auto, unscathed the night before, suddenly sported several dents of unknown origin, GEICO could cite the "identified" language and assert no coverage.

5. In reaching our conclusion, we are mindful that the Indiana Uninsured Motorist Act, Indiana Code Section 27–7–5–2, "does not require insurance policies to cover any hit-and-run accidents, so any coverage that they do provide extends beyond the requirements of the Act." *Rice v. Meridian Ins. Co.,* 751 N.E.2d 685, 690 (Ind.Ct.App.2001), *trans. denied.* In contrast, other states' statutes define uninsured motor vehicle to include a hit and run automobile. *See Indiana Ins. Co. v. Allis,* 628 N.E.2d 1251, 1254 n. 2 (Ind.Ct.App. 1994), *trans. denied.* Still other states adopt a middle ground for hit and run accidents, requiring some physical impact or disinterested witnesses. *See id.* Here, without having provided a definition for "hit and run," the Policy is unclear as to whether GEICO would cover a "miss and run" where there was no identifying information whatsoever.

tors, after causing an accident resulting in injury to occupants of an insured vehicle, leave the scene of the accident *without becoming identified.*") (Emphasis supplied.)

The same is true of operators of "miss-and-run" vehicles like that in the case before us:

> Much litigation has been devoted to resolving issues arising out of accidents that resulted in injuries to insured persons without any physical contact between an insured person or vehicle, and the *unidentified* vehicle which was alleged to have caused the accident. Typically, such "miss-and-run," or "phantom" vehicle, cases have arisen when an improperly operated *unidentified* vehicle forced or otherwise caused the operator of an insured vehicle to take evasive action in order to avoid a collision with an *unidentified* vehicle, another vehicle, or some object, resulting in a collision with another vehicle or object, or where the *unidentified* vehicle causes an operator of another vehicle to take an evasive action that in turn caused the other vehicle to strike the insured vehicle.

*Id.* (footnotes omitted, emphases supplied).

I would not interpret the GEICO policy's unexplained reference to "Your Protection For Injuries Caused by Uninsured And Hit And Run Motorists" to provide coverage for unidentified "hit-and-run" drivers, as is typical in uninsured motorist provisions, but at the same time to require, as the policy seems to, that a "miss-and-run" driver be identified in order for her auto to be considered "uninsured." *See, e.g., Streitweiser v. Middlesex Mutual Assurance Co.,* 219 Conn. 371, 593 A.2d 498, 502 (1991):

with respect to uninsured motorist coverage in general, we can discern no viable distinction between identified and unidentified uninsured tortfeasors. From the point of view of the injured claimant ... it does not matter whether the tortfeasor is a known person who is uninsured or underinsured or an unidentified motorist whose insurance coverage, if any, is functionally unavailable.

Nor would I differentiate between the "hit-and-run" coverage the policy suggests it provides and "miss-and-run" coverage under the uninsured motorist provisions based on the physical contact that is necessarily present in a hit-and-run accident and absent in a miss-and-run accident. That distinction would lead to the bizarre result that uninsured motorist coverage would be available for the less vigilant driver who does not avoid a collision but would be denied to the more adroit driver who manages to avoid the greater hazard.[6] *Id.*

The GEICO policy purports to offer "Protection For Injuries Caused by ... Hit And Run Motorists" but at the same time appears to include as a condition of uninsured motorist coverage an identification requirement that is inconsistent with such "protection" of the policyholder. I therefore question whether the GEICO policy could properly deny uninsured motorist coverage for Gillespie even had the "miss-and-run" driver not been sufficiently identified.

### ORDER

The Appellant, by counsel, has filed a Motion for Publication of Memorandum Decision. Appellant requests an order from the Court to publish its opinion hand-

---

**6.** The *Streitweiser* court found imposing liability on the insurer was particularly appropriate because the parties, as did Gillespie and GEICO in the case before us, had stipulated to the causal relationship between the conduct of the "miss-and-run" driver and injuries the insured party sustained. *Id.*

ed down on April 19, 2006, because it "establishes, modifies, or clarifies a rule of law." *See* Ind. Appellate Rule 65(A)(1).

Having reviewed the matter, the Court FINDS AND ORDERS AS FOLLOWS: 1. The Appellant's Motion for Publication of Memorandum Decision is GRANTED, and this Court's April 19, 2006 opinion is now ordered published.

All Panel Judges Concur.