# FOR PUBLICATION



**FILED**

Jun 28 2013, 7:01 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANTS:

**GEORGE M. PLEWS**
**SEAN M. HIRSCHTEN**
Plews Shadley Racher & Braun, LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**FREEDOM D. VILLA**
Smith Fisher Maas & Howard, P.C.
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| SHANNON ROBINSON and BRYAN ROBINSON, | ) ) ) | |
| Appellants-Plaintiffs, | ) ) | |
| vs. | ) ) | No. 49A02-1211-PL-908 |
| ERIE INSURANCE EXCHANGE, | ) ) ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Thomas J. Carroll, Judge
Cause No. 49D06-1107-PL-26871

**June 28, 2013**

**OPINION - FOR PUBLICATION**

**MAY, Judge**

Shannon and Bryan Robinson (collectively, "Robinson") appeal summary judgment for Erie Insurance Exchange, which denied Robinson's claim for uninsured motorist coverage after a hit-and-run accident. As the car that hit Robinson was uninsured as a matter of law, we reverse.

## FACTS AND PROCEDURAL HISTORY

On March 11, 2011, Bryan Robinson was westbound when a southbound Jeep ran a red light and hit his car. The Jeep hit a second car, then left the scene. Bryan was not injured but the car was totaled. The car was insured under an Erie policy that was sold to Shannon, Bryan's mother, and that listed Bryan as a driver. The policy obliged Erie to "pay damages for bodily injury and property damage that the law entitles **'anyone we protect' . . .** to recover from the owner or operator of an **'uninsured motor vehicle[.]'"** (App. at 21.) Erie denied coverage on the sole ground the policy did not include collision coverage. Its denial letter did not mention uninsured motorist coverage.

The Robinson policy had three definitions of "uninsured motor vehicle":

**"Uninsured motor vehicle"** means:
1. A "motor vehicle" for which there is no liability bond or insurance at the time of the accident in the amounts required by the financial responsibility law where the **"auto we insure"** is principally garaged;
2. A **"motor vehicle"** for which the insuring company denies coverage or is or becomes insolvent;
3. A hit-and-run **"motor vehicle."** The vehicle must cause bodily injury to **"you"** by hitting **"you,"** an **"auto we insure"** or a vehicle **"you"** are **"occupying."** The identity of the driver and owner of the hit-and-run vehicle must be unknown. The accident must be reported to the police or other proper governmental authority within 24 hours or as soon as possible. **"You"** must notify **"us"** as soon as possible.

2

(*Id*. at 20.)  The policy excluded uninsured motorist coverage for "property damage, if the owner or operator of the other **"motor vehicle"** cannot be identified."  (*Id*. at 21.)

Robinson and Erie both moved for summary judgment.  Robinson argued there was coverage under the first definition of "uninsured motor vehicle" because "no liability bond or insurance at the time of the accident" was available, (*id*. at 20), and no exclusion applied because Erie did not show the other driver could not be identified.  Erie argued a hit-and-run vehicle cannot be identified, and no coverage was available for this hit-and-run vehicle under the third definition because Bryan was not injured.  The trial court granted Erie's motion.

## DISCUSSION AND DECISION

When reviewing a summary judgment, we use the same standard as the trial court: summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *State Auto. Mut. Ins. Co. v. Flexdar, Inc.*, 964 N.E.2d 845, 848 (Ind. 2012), *reh'g denied.*  All facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party.  *Id*.

Interpretation of an insurance policy presents a question of law that is particularly suitable for summary judgment.  *Id*.  Where there is ambiguity, insurance policies are construed strictly against the insurer and the policy language is viewed from the standpoint of the insured.  *Id*.  This is especially true where the language in question purports to exclude coverage.  *Id*.  Insurers are free to limit the coverage of their policies, but such limitations must be clearly expressed to be enforceable.  *Id*.  Where provisions limiting coverage are not

3

clearly and plainly expressed, the policy will be construed most favorably to the insured, to further the policy's basic purpose of indemnity. *Id*. Where ambiguity exists not because of extrinsic facts but by reason of the language used, the ambiguous terms will be construed in favor of the insured for purposes of summary judgment. *Id*. More specifically, uninsured motorist provisions should be liberally construed in favor of the insured. *Indiana Farmers Mut. Ins. Co. v. Speer*, 407 N.E.2d 255, 259 (Ind. Ct. App. 1980).

Robinson argues the Jeep that hit Bryan's car was an uninsured vehicle pursuant to the first definition in the policy – that there was "no liability bond or insurance at the time of the accident[,]"[1] (App. at 20), and the policy exclusion concerning "property damage, if the owner or operator of the other **"motor vehicle"** cannot be identified," (*id*. at 21), does not apply.[2]

In *Gillespie v. GEICO Gen. Ins. Co.*, 850 N.E.2d 913, 915 (Ind. Ct. App. 2006), the policy defined "uninsured auto" in language similar to that used in Robinson's policy, as:

> a motor vehicle which has no bodily injury liability bond or insurance policy applicable with liability limits complying with the financial responsibility law of the **state** in which the **insured auto** is principally garaged at the time of the accident. This term also includes an auto whose insurer is or becomes insolvent or denies coverage.

It went on to provide "The term '**uninsured auto**' does not include: . . . a vehicle whose owner or operator cannot be identified." *Id*.

---

[1] Erie argues at length in its brief that the vehicle was not uninsured under the third definition because Bryan was not injured. But it also concedes "a vehicle can be considered an uninsured vehicle under Erie's policy if it is a vehicle without liability insurance OR if it is a hit-and-run vehicle which [sic] causes bodily injury." (Appellee's Br. at 8.) We agree, and we will therefore address only the first definition.

[2] Erie "concedes that none of the exclusions apply," (Appellee's Br. at 19), and argues only "there is no grant of coverage in the first place." (*Id*.) We accordingly will not address the effect of that exclusion.

4

Our focus in *Gillespie* was whether the vehicle that caused an accident and then left the scene was "identified" when it was described as a "white Honda driven by a Caucasian female." *Id*. at 916. We determined it was, and then said "[b]ecause the Caucasian female driver of the white Honda left the scene of the accident that she caused, there was 'no bodily injury liability bond or insurance policy applicable with liability limits complying with [Indiana's] financial responsibility law' available." *Id.* at 918 (quoting the policy definition of "uninsured auto"). Thus, the white Honda was "uninsured" under the policy, and there should have been coverage. *Id*.

*Gillespie* controls. As the driver who hit Bryan fled the scene, there was 'no bodily injury liability bond or insurance policy applicable with liability limits complying with [Indiana's] financial responsibility law' available." *Id*. That brings Robinson within the first of the three "uninsured motor vehicle" definitions in the Erie policy,[3]

In *Dowell v. Safe Auto Ins. Co.*, 208 S.W.3d 872, 876 (Ky. 2006), Dowell's policy defined an uninsured vehicle as one "to which no bodily injury liability bond or policy applies at the time of the accident." Safe Auto argued it was unknowable whether the

---

[3] Erie asserts Robinson is not covered pursuant to "the decision in *Allis* wherein the Court held that a miss-and-run vehicle that left the scene of the accident could not be described as a vehicle without liability insurance." (Appellee's Br. at 8.) That statement is presumably a reference to *Indiana Ins. Co. v. Allis*, 628 N.E.2d 1251 (Ind. Ct. App. 1994), *trans. denied*, which is cited elsewhere in Erie's brief. Erie does not offer a citation to the page in *Allis* where such a broad holding might be found, and we will not, on appeal, search the authorities cited by a party in order to find legal support for its position. *Young v. Butts*, 685 N.E.2d 147, 151 (Ind. Ct. App. 1997).

 Regardless, *Allis* is not helpful to the resolution of the case before us. The *Allis* panel addressed only the definition of "uninsured motor vehicle" in the Uninsured Motorist Act, Ind. Code § 27-7-5-2, and it explicitly noted the Act did not require an insurer to provide hit and run coverage. 628 N.E.2d at 1255. "[A]dditional or greater coverage is a matter of contract-which contemplates coverage in exchange for a premium." *Id*. at 1253. In the case before us the policy language, and not the statute, governs. Finally, the *Allis* panel addressed the *physical impact* requirement in the policy language. Nothing in *Allis* precludes coverage for Robinson.

tortfeasor had liability insurance because he absconded; therefore Dowell could not show the tortfeasor was an uninsured motorist. The Court said:

> the use of the word "applies" in the policy makes it clear that since the tortfeasor cannot be located, his actual insurance status is not controlling. In any event "applies" should be given the meaning that most favors "[Dowell]. As a matter of law, since the hit and run driver cannot be located, no insurance policy "applied" at the time of this accident.

*Id*. at 878 (footnote omitted).

Similarly, as the driver who hit Bryan could not be located, "his actual insurance status is not controlling." *Id*. He or she is to be considered uninsured. *And see* 7A Am. Jur. 2d Automobile Insurance § 342 (noting authority that when "uninsured vehicle" is defined to include a motor vehicle "to which no bodily injury liability bond or policy applies" at the time of the accident, no insurance policy "applies"[4] to a hit-and-run vehicle at the time of an accident).

As the car that hit Bryan must be considered an uninsured motor vehicle, Erie's summary judgment motion should have been denied and Robinson's should have been granted. We accordingly reverse.

---

[4] Erie asserts there is a "crucial distinction," (Appellee's Br. at 14), between the language in the Robinson policy and that in the *Gillespie* policy: "the Erie policy does not require that there be no insurance ***applicable***, but that there be ***NO*** insurance, period." (*Id*.) Erie offers no legal authority to support its contention that distinction is "crucial," or even meaningful, and that argument is therefore waived on appeal. *See, e.g., Parmeter v. Cass Cnty. Dep't of Child Servs*., 878 N.E.2d 444, 452 (Ind. Ct. App. 2007) (argument waived when litigant cited no authority in support of her contention), *reh'g denied*. Notwithstanding the waiver, we agree with the *Dowell* Court that when the driver who hits an insured cannot be located, his actual insurance status is not controlling.

Reversed.

BAKER, J., and MATHIAS, J, concur.